# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
Orlando Division

ELMER MARIN,

    Plaintiff,                                                       Case No. 6:24-cv-1049

v.

MAGICAL CRUISE COMPANY, LTD.,
d/b/a Disney Cruise Line,

    Defendant.
_____/

## NOTICE OF REMOVAL

Pursuant to 9 U.S.C. §205, Magical Cruise Company, Ltd. d/b/a Disney Cruise Line (DCL) files this notice of removal.[1]

## INTRODUCTION

Plaintiff Elmer Marin was fired from his employment from DCL after twice testing positive for marijuana in February 2020 in violation of DCL's drug-free workplace policy. Marin asserts that his termination was wrongful because he accidentally ingested the marijuana when eating coconut bread that was allegedly secretly laced with the drug and given to him by a co-worker. At his deposition, Marin admits that all the damages sought in his lawsuit – wage damages, psychological

---

[1] DCL's notice and motion to compel arbitration repeat the same facts and arguments because they are based on the same premise: that the plaintiff's claims are subject to an arbitration agreement falling under the Convention. Because 9 U.S.C. §205 and 9 U.S.C. §206 require the same showing – i.e., that the action relates to arbitration and meets the Conventions four jurisdictional prerequisites—the notice and removal are essentially the same.

damages, emotional damages, financial damages, reputational damages – stem from his alleged wrongful termination. Marin was employed onboard the Disney *Wonder* in 2020 under an employment agreement and an incorporated collective bargaining agreement requiring mandatory arbitration of any "complaint or dispute concerning a violation of a term or terms of this Agreement where the Seafarer feels his/her rights have been violated," including any "Crew Member who feels wrongfully terminated."

Because the arbitration agreement meets the four jurisdictional requirements of the Convention—is a written agreement, provides for arbitration in a Convention signatory (England), concerns a commercial legal relationship, and has at least one party who is not an American citizen (Marin)—Marin cannot pursue his claims in litigation and the dispute is subject to binding arbitration. Because the action "relates to an arbitration . . . falling under the Convention," 9 U.S.C. §205 permits DCL to remove the action to federal court.

## STATEMENT OF FACTS

1. Marin, a Honduran citizen, was employed by DCL onboard the Disney *Wonder* per an employment contract he signed on January 5, 2020. (See Marin deposition attached as **Exhibit 1**, 106:4-13.) The employment agreement incorporated a collective bargaining agreement ("CBA"). (**Ex. 1**, 107:23-108:12.)

2. The CBA in effect throughout Marin's employment is attached. (See CBA attached as **Exhibit 2**.) Marin admits that the attached CBA applied to his employment onboard the Disney *Wonder* and that he is bound by it. (**Ex. 1**, 107:23-

108:25.)

3. Article 24 of the CBA describes the "mandatory process by which a Seafarer can appeal a disciplinary action or termination that he/she feels was unjust." (**Ex. 2**, 12.) First, the crewmember must appeal the decision through the "Commitment to Crew" process, which "must be exhausted prior to resorting to the grievance and arbitration procedure." (**Ex. 2**, 12.)

4. Under the Commitment to Crew process, the crewmember has two types of appeal: a "disciplinary action appeal" and a "termination action appeal." (**Ex. 2**, 20.) The termination action appeal "allows a Crew Member who feels wrongfully terminated the opportunity to appeal the decision to the *Disney Cruise Line* President (or designee)." (**Ex. 2**, 21.)

5. To appeal under this process, a crewmember must: (1) "request a Termination Appeal Statement from the Human Resources Manager prior to leaving the ship" or by "contacting the *Disney Cruise Line* shoreside Employee Relations" after leaving the ship; (2) complete the statement; and (3) email or mail the statement to the listed address (**Ex. 2**, 21.) A form termination appeal statement is included in the CBA. (**Ex. 2**, 22.)

6. Upon receipt of the statement, the *"Disney Cruise Line* President (or designee) will review the appeal," confer with the appropriate director or vice president, decide the appeal, and forward the decision to the crewmember. (**Ex. 2**, 21.)

7. Upon exhausting this process, the crewmember can then either follow the

grievance procedure or institute binding arbitration to determine his "grievance." (**Ex. 2**, 12.) A "grievance" is defined as a "complaint or dispute concerning a violation of a term or terms of this Agreement where the Seafarer feels his/her rights have been violated." (**Ex. 2**, 12.)

8. The CBA is clear that while the "grievance procedure is voluntary," the "arbitration procedure described below is mandatory, with such arbitration being the only forum in which a grievance or other dispute may be resolved outside the grievance procedure, and the only forum in which the resolution of the grievance or other dispute will be binding on the Company." (**Ex. 2**, 13.)

9. Article 24(C)(5) describes the procedure for binding arbitration:

> 5) <u>Arbitration Procedure</u>
>
> If conciliation is unsuccessful in resolving the grievance then the Seafarer may request Arbitration.
>
> The Seafarer must request arbitration through the Union. Arbitration requests must be made in writing within ten (10) days after the date of the outcome of the Conciliation Conference. The Seafarer shall submit the arbitration request to the Union Representative – Remo Di Fiore, Rome, Italy, Via Antonio Musa, 4 and to the Company at [DCL] – Human Resources Manager, 3 Queen Carolina Street, London, England W6 9PE . . .
>
> All grievances under this Agreement whether asserted against the DCL, Master, Employer, Ship Owner, vessel or vessel operator shall be referred to and resolved exclusively by mandatory binding arbitration.
>
> Any arbitration shall take place in London, England at the offices of [DCL] at 3 Queen Caroline Street, London, England W6 9PE or in any other location mutually agreed

>to by [DCL] and the Union. The procedural and substantive law of the arbitration shall be the law of England. The language of any arbitral proceedings shall be English.

(**Ex. 2**, 14-15.)

10. Marin was fired from his position in February 2020 after testing positive for marijuana and violating DCL's drug-free workplace policy. (**Ex. 1**, 30:16-18, 64:24-65:7, 74:5-18, 75:15-78:8.) Marin asserts his termination was wrongful because his consumption was accidental, and that marijuana was secretly within Jamaican coconut bread provided to him by a fellow DCL co-worker. (**Ex. 1**, 52:5-20, 84:2-8, 92:9-93:23.)

11. To contest his alleged wrongful termination, Marin failed to follow the required CBA process. Marin has not requested or completed a termination appeal statement, as required by the Commitment to Crew process. (**Ex. 1**, 110:22-24, 111:7-15.) Marin has not sent any written grievances to DCL's London office or his union representative. (**Ex. 1**, 112:7-24.) Marin has not requested or instituted binding arbitration. (**Ex. 1**, 113:1-3.)

12. Instead, on February 17, 2023, Marin filed a complaint against DCL alleging that, despite testing positive for drug use, he was "wrongfully terminated in breach of his employment contract" and "wrongfully accused . . . of buying and/or consuming drugs," which caused him to suffer damages, including "great harm to his reputation and future livelihood," "great fear, severe emotional distress, humiliation, shock, and mental anguish." (See complaint, ¶10-12.)

5

13. Marin also alleges in his complaint that he became "violently ill" and suffered "extensive damages" after eating coconut bread that "unbeknownst to [him] . . . had been tainted with drugs." (Compl., ¶10, 13.)

14. Marin's complaint has six counts, including Jones Act negligence and unseaworthiness counts, but fails to explain what counts relate to what specific damages Marin suffered, and what caused those damages. (Compl.)

15. Marin's complaint blurs the line between a personal injury claim and a wrongful termination claim. (Compl.) Marin is seemingly asserting two distinct claims in his complaint – a negligence claim and a wrongful termination claim – but does not define what damages are attributable to which cause of action.

16. On June 29, 2023, DCL answered the complaint, denied the allegations, and asserted that Marin's wrongful termination claims are "subject to the terms and conditions of his contract of employment with DCL, including the incorporated collective bargaining agreement" and that Marin has "failed to exhaust the administrative remedies prescribed in the collective bargaining agreement." (See answer and affirmative defenses, defenses 6 and 12.)

17. However, because DCL was unable to understand the exact nature of Marin's claim and because it was unclear from the complaint whether all of Marin's claims were subject to binding arbitration or whether Marin had claims unrelated to his wrongful termination, DCL sought initial written discovery and deposed Marin.

18. At his April 18, 2024 deposition, Marin made the following admissions:

- His lawsuit against DCL is based on DCL's wrongful termination of him

6

    (**Ex. 1**, 95:8-21);

- Marin does not have anything physically wrong with him (**Ex. 1**, 96:16-21);

- Instead, the damages he is seeking are wage losses, psychological damages, financial issues, and emotional issues (**Ex. 1**, 34:2-15, 101:8-25);

- All those damages that Marin is seeking in the lawsuit were caused by his alleged wrongful termination (**Ex. 1**, 34:2-15, 38:4-39:2, 105:9-19, 106:17-107:3).

19.    Upon learning that all of Marin's damages were attributable to his wrongful termination claim, not a personal injury claim, DCL immediately ceased litigation in the state-court action and waited 30 days for Marin to complete his errata sheet. Marin did not file an errata sheet.

20.    DCL files this notice of removal and attaches all state court process, pleadings, and orders.

## MEMORANDUM OF LAW

### I.    The court's "limited inquiry" standard

The New York Convention is a "multilateral treaty that addresses international arbitration." *GE Energy Power Conversion Fr. SAS v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020). The Convention "requires courts of signatory nations to give effect to private arbitration agreements and to enforce arbitral awards made in signatory nations." *Sierra v. Cruise Ships Catering & Servs. Int'l, N.V.*, 631 F. App'x 714, 715 (11th Cir. 2015). Both the United States and the United Kingdom are signatories

to the New York Convention.[2]

The United States implements and enforces the Convention through Chapter 2 of the Federal Arbitration Act (the FAA). *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011); *see* 9 U.S.C. §§201-208. "In accordance with the Convention, '[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention . . . the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States.'" *Cakerevic v. Royal Caribbean Cruises, Ltd.*, No. 2321536, 2023 U.S. Dist. Lexis 103672, *4 (S.D. Fla. June 14, 2023) (quoting 9 U.S.C. § 205).

The Convention itself "establishes a strong presumption in favor of arbitration of international commercial disputes." *Sierra*, 631 F. App'x at 716. The Supreme Court has explained that the "goal of the Convention . . . was to encourage the recognition and enforcement of commercial arbitration agreements." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). "Any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Arbitration is routinely compelled for seaman who agreed to arbitration in their employment contract and incorporated CBA. *See*, *e.g.*, *Lindo*, 652 F.3d at 1287; *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005); *Maxwell v. NCL (Bahamas), Ltd.*, 454 F. App'x 709, 710 (11th Cir. 2011).

---

[2] See https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2.

Due to this strong presumption in favor of arbitration, courts conduct a "very limited inquiry" into whether a given dispute is subject to the Convention and thus subject to removal. *Northrop and Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard, B.V.*, 855 Fed. Appx 468, 472 (11th Cir. 2021) (citing *Alberts v. Royal Caribbean Cruises, Ltd.*, 834 F.3d 1202, 1204 (11th Cir. 2016)). The court examines four jurisdictional prerequisites under the Convention: (1) whether there is an agreement in writing to arbitrate the dispute; (2) whether the agreement provides for arbitration in the territory of a signatory of the Convention, (3) whether the agreement to arbitrate arises out of a commercial legal relationship; and (4) whether there is a party to the agreement who is not an American citizen. *Bautista*, 396 F.3d at 1294; *Lindo*, 652 F.3d 1257. If these prerequisites are met, removal is proper and a "court must enforce [the] agreement to arbitrate." *Ruiz v. Carnival Corp.*, 754 F. Supp. 2d 1328, 1330 (S.D. Fla. 2010).

II.  The four jurisdictional prerequisites are met

All four prerequisites are met here. First, there must be an arbitration agreement "in writing within the meaning of the Convention." *Bautista*, 396 F.3d at 1294 n.7. Marin admits that he is bound by the CBA and the CBA applies to his employment onboard the Disney *Wonder*. (**Ex. 1**, 107:23-108:25.) The CBA requires Marin to arbitrate – and perform the conditions precedent to arbitration – for any "grievance," meaning any "complaint or dispute concerning a violation of a term or terms" of the crewmember's employment where he "feels his/her rights have been violated," including any "Crew Member who feels wrongfully terminated." (**Ex. 2**, 12, 21.)

9

Marin admits that his lawsuit against DCL is based on DCL's wrongful termination of him and all the damages he is seeking in the lawsuit were caused by his alleged wrongful termination. (**Ex. 1**, 34:2-15, 38:4-39:2, 95:8-21, 96:16-21, 101:8-25, 105:9-19, 106:17-107:3). Therefore, all of Marin's claims are subject to binding arbitration.

Second, the arbitration agreement must "provide for arbitration in the territory of a signatory of the Convention." *Bautista*, 396 F.3d at 1294 n.7. The arbitration agreement in this case directs that "arbitration shall take place in London, England" and shall apply the "law of England." (**Ex. 2**, 14-15.) As noted above, the United Kingdom, including England, is a signatory to the Convention.

Third, the arbitration agreement must "arise[] out of a legal relationship, whether contractual or not, which is considered commercial." *Bautista*, 396 F.3d at 1294 n.7. The Eleventh Circuit holds that "crewmembers' arbitration provisions constitute commercial legal relationships within the meaning of the Convention Act." *Bautista*, 396 F.3d at 1300.

Fourth, at least one party to the arbitration agreement "is not an American citizen." *Bautista*, 396 F.3d at 1294 n.7. Marin is a citizen of Honduras and not an American citizen.

## **CONCLUSION**

DCL's removal of this action from state court is proper and valid pursuant to 9 U.S.C. §205 and the Convention.[3] DCL requests this District Court to accept the

---

[3] DCL will pay the requisite filing fee.

notice of removal of the action now pending in Brevard County Circuit Court and remove the matter to this District Court.

**/s/ Elbert L. Martin, IV**
ELBERT L. MARTIN, IV
Florida Bar No. 0098010
DAVID W. McCREADIE
Florida Bar No. 308269
LAU, LANE, PIEPER, CONLEY
& McCREADIE, P.A.
100 S. Ashley Drive, Suite 1650
Tampa, Florida 33602
Tel: (813) 229-2121
Fax: (813) 228-7710
Attorneys for Defendant

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 7, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served via email (lap@perezlaw.net) and FedEx on Luis Perez, Law Offices of Luis A. Perez, P.A., 9500 S. Dadeland Blvd., Suite 702, Miami, Florida 33156 (the attorney for Elmer Marin).

                                            **/s/ Elbert L. Martin, IV**
                                            ELBERT L. MARTIN, IV
                                            Florida Bar No. 0098010